**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

TEDERRELL G.,

                                        Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,                    No. 5:20-CV-1129
                                                    (GLS/CFH)

                                        Defendant.

_____

**APPEARANCES:**                            **OF COUNSEL:**

Tederrell Grant
130 Vann Street
Syracuse, New York 13206
Plaintiff pro se

Social Security Administration              NATASHA OELTJEN, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Rm. 625
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

        Tederrell G.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying his application for disability insurance benefits.  See Dkt. No. 1 ("Compl.").  The

Commissioner moves for judgment on the pleadings.  See Dkt. No. 22.  Plaintiff has not

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

filed written opposition to this motion.[2]  For the following reasons, it is recommended

that the Commissioner's decision be affirmed.

# I. Background

On August 18, 2016, plaintiff's alleged disability onset date, he filed a Title XVI

application for supplemental security income.  <u>See</u> T. at 72-74.[3]  The Social Security

Administration ("SSA") denied plaintiff's claim on November 9, 2016.  <u>See id.</u> at 75.

Plaintiff requested a hearing, <u>see id.</u> at 84, and a hearing was held on February 19,

2019, before Administrative Law Judge ("ALJ") Laureen Penn.  <u>See id.</u> at 30-62.  On

May 6, 2019, the ALJ issued an unfavorable decision.  <u>See id.</u> at 15-23.  On June 11,

2020, the Appeals Council denied plaintiff's request for review.  <u>See id.</u> at 1-5.  Plaintiff

commenced this action on August 17, 2020.  <u>See</u> Compl.

# II. Legal Standards[4]

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not

determine de novo whether an individual is disabled.  <u>See</u> 42 U.S.C. §§ 405(g),

1388(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.

---

[2] The Court sua sponte provided plaintiff with an extension of time to file his brief.  <u>See</u> Dkt. No. 21
[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. <u>See</u> Dkt. No. 19.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.
[4] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

1990).  Rather, the Commissioner's determination will only be reversed if the correct

legal standards were not applied or it was not supported by substantial evidence.  See

Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d

464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning

that in the record one can find "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d

Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal

citations omitted)).  The substantial evidence standard is "a very deferential standard of

review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a

reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin.,

Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks,

citation, and emphasis omitted).  Where there is reasonable doubt as to whether the

Commissioner applied the proper legal standards, the decision should not be affirmed

even though the ultimate conclusion is arguably supported by substantial evidence.

See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817

F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding

is supported by substantial evidence, such finding must be sustained "even where

substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v.

Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a

> claimant who is afflicted with a "listed" impairment is unable
> to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity
> to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-

disability can be made, the SSA will not review the claim further." Barnhart v. Thomas,

540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each

of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998)

(citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere. Id. (citing Berry, 675 F.2d at 467).


### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined

that plaintiff had not engaged in substantial gainful activity since August 18, 2016, his

application date. See T. at 17. At step two, the ALJ found that plaintiff had the following

severe impairments: "gout and rheumatoid arthritis[.]" Id. at 18. At step three, the ALJ

determined that plaintiff did not have an impairment or combination of impairments that

met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1. See id. The ALJ considered Listing 14.09 for

inflammatory arthritis.  See id.  Before reaching step four, the ALJ concluded that

plaintiff retained the residual functional capacity ("RFC") to perform light work as defined

in 20 C.F.R. § 416.967(b) except

> [he] can lift and carry twenty pounds occasionally and ten pounds
> frequently, stand and walk for six hours, and sit for six hours.  The
> claimant can occasionally stoop, crouch, kneel, crawl, and climb ramps
> and stairs, but cannot climb ladders, ropes, or scaffolds.  The claimant
> can frequently handle and finger with his dominant right upper extremity, and
> can occasionally handle and finger with his left upper extremity.  The
> claimant should avoid concentrated exposure to vibration and hazards.

Id.  At step four, the ALJ determined that plaintiff was unable to perform relevant

past work.  See id. at 21.  At step five, considering the plaintiff's age, education,

work experience, and RFC, the ALJ concluded that there were jobs that existed

in significant numbers in the national economy that plaintiff could perform.  See

id. at 22.  Thus, the ALJ determined that plaintiff had "not been under a disability,

as defined in the Social Security Act, since August 18, 2016, the date the

application was filed[.]"  Id. at 23.


# IV. Arguments[5]

The Commissioner argues that the ALJ's RFC and disability determinations are

supported by substantial evidence.  See Dkt. No. 22 at 11-26.  Plaintiff did not file a brief

or respond.  See Dkt. No. 21.  It is well settled that a plaintiff bears the burden of

establishing disability.  See Melville v. Apfel, 198 F.3d 45, 51 (2d Cir.1999); Carroll v.

Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983).  In the Northern

---

[5] The Court's citations to the Commissioner's brief refer to the pagination generated by CM/ECF in the pages' headers.

District of New York, General Order No. 18 notifies parties of the consequences of

failing to file a brief in connection with a social security action.[6]  "[W]here [the] [p]laintiff

is proceeding pro se, General Order No. 18's promise of a consideration of the merits

complies with the special solicitude that the Second Circuit mandates for pro se

litigants."  Hubbard v. Comm'r of Soc. Sec., No. 6:14-CV-1401 (GTS/WBC), 2016 WL

551783, at *4 (N.D.N.Y. Jan. 14, 2016).  As such, despite plaintiff's failure to file a brief,

the Court will "examine[ ] the record to determine whether the ALJ applied the correct

legal standard[s] and reached a decision based on substantial evidence."  Id. (citing

Gregorka v. Comm'r of Soc. Sec., No. 6:13-CV-1408 (GTS/TWD), 2015 WL 3915959, at

*4 (N.D.N.Y. June 25, 2015)).  In doing so, the Court recognizes that plaintiff challenged

the ALJ's development of the record in his request for review by the Appeals Council.

See T. at 211-12.  Therefore, the Court will address that issue in addition to the typical

review of the ALJ's application of the five-step disability evaluation.


## V. Discussion

### A. Development of the Record

Plaintiff was unrepresented during his hearing before the ALJ but was counseled

for his request for review by the Appeals Council.  See T. at 32-34, 211-12.  In his

appeal, plaintiff argued that the ALJ should have obtained a medical source statement

from his treating provider Sheri Spink-Palmieri, P. A., or recontacted consultative

---

[6] "A party's brief may be its only opportunity to set forth arguments that entitle the party to a judgment in
its favor.  The failure to file a brief by either party may result in the consideration of the record without the
benefit of the party's arguments."  N.D.N.Y. General Order No. 18 at 6.

examiner Elke Lorensen, M.D., to clarify the consultative examination findings "[b]ecause the record lacks a medical opinion of Claimant's capabilities from any treating or examining source[.]" Id. at 211.

Although a plaintiff has the general burden of proving that he or she has a disability within the meaning of the Act, "[g]iven the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, even if the claimant is represented by counsel, to develop the medical record if it is incomplete." Tammy H. v. Comm'r of Soc. Sec., No. 5:18-CV-851 (ATB), 2019 WL 4142639, at *7 (N.D.N.Y. Aug. 30, 2019). Further, "courts in this Circuit have held that an ALJ's mere request to plaintiff or his counsel to provide additional medical records does not sufficiently satisfy the ALJ's duty to develop the record when the records are never provided[.]" Carr v. Comm'r of Soc. Sec., No. 16-CV-5877 (VSB/JCF), 2018 WL 3410012, at *4 (S.D.N.Y. July 12, 2018) (collecting cases). "In this regard, the ALJ must make every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." Kentile v. Colvin, No. 8:13-CV-880 (MAD/CFH), 2014 WL 3534905, at *12 (N.D.N.Y. July 17, 2014) (citations and internal quotation marks omitted) (alterations in original).

Given plaintiff's pro se status, the ALJs duty to develop the record was "heightened." Moran v. Astrue, 569 F.3d 108, 113 (2d Cir. 2009) (citation omitted). "This is because the ALJ must adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered by scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts." Lakeisha H. v. Comm'r of Soc. Sec. Admin., No. 1:19-CV-01395 (TJM), 2021

WL 1206549, at *6 (N.D.N.Y. Mar. 31, 2021) (quoting Moran, 569 F.3d at 113) (internal quotation marks omitted).  "[B]efore reviewing the ALJ's disability determination under the substantial evidence standard, the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." Scott v. Astrue, No. 09-CV-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (citation and quotation marks omitted).  "In addition, 'the ALJ's duty to develop the record includes advising the *pro se* plaintiff on the importance of evidence from his or her treating physician.'" Lakeisha H., 2021 WL 1206549, at *6 (quoting Scott, 2010 WL 2736879, at *13).

In Lakeisha H., this Court remanded "because the ALJ did not satisfy his heightened duty to protect the rights of the *pro se* litigant by failing to ensure that all of the relevant facts are sufficiently developed and considered[.]"  2021 WL 1206549, at *10.  There, the ALJ "fail[ed] to advise the *pro se* claimant on the importance of evidence from her treating physician, . . .  [and] fail[ed] to provide advanced notice to . . . to allow the [her] to produce additional medical evidence or call her treating physician as a witness[.]"  Id.  Rather, when the ALJ sent a notice to the plaintiff informing her that the ALJ obtained additional records after her hearing, the ALJ falsely noted that there were records obtained from a treating provider, and this "mistaken representation . . . might have lulled [the p]laintiff into a false belief that the 300 pages of records included [those] records."  Id. at *8; see also Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999) (explaining that "[i]t was also apparent" that the plaintiff had been visiting numerous other providers and "[h]ad the ALJ pursued additional information from any or

all of these sources, it is at least possible that the record would have included sufficient information to sustain [the] plaintiff's claim of disability.").

During plaintiff's hearing, the ALJ reviewed the submitted evidence and recognized a large gap in treatment records from plaintiff's treating providers, Northeast Medical Family Physicians ("Northeast") and Arthritis Health Associates.  See T. at 36-37.  The ALJ asked plaintiff if he had continued to see either provider after August 2016. See id. at 36.  Plaintiff explained that he continued to see both providers, but that Larry Novak, M.D., his primary provider at Northeast, retired, and he stopped seeing him "about six months ago."  Id. at 38.  Plaintiff explained that his new primary care physician was "Dr. Tsai" but he had not yet seen him.  Id. at 39.  The ALJ twice explained that "it's important that we have all that medical evidence in.  So I am going to go through with you what I have, and you can tell me what's outstanding. . . .  [I]t's important that we have everything.  But for now, I'll note those are the two sources that are outstanding."  Id. at 36-37.

Following the hearing, plaintiff completed an updated medications form wherein he noted that he "requested/submitted all my medical history up to date from arthritis associations [sic] to the social security office."  T. at 203.  The ALJ sent two notices to plaintiff on March 11, 2019, and April 8, 2019, informing him that additional evidence was secured from Patrick Riccardi, M.D., and Arthritis Health Care Associates.  See id. at 207-210, 376-479.  The ALJ enclosed the evidence with the letter and informed plaintiff of his right to comment on or object to the evidence, and his duty to submit additional evidence.  See id. at 207, 209.  Further, both letters informed plaintiff that if the ALJ did not "receive a response . . . within 10 days of the date you receive this

notice, I will assume you do not wish to submit any additional items.  Unless I determine that you are eligible for a supplemental hearing, I will enter the new evidence in the record and submit my decision."  Id. at 210.  The record does not contain a response from plaintiff, and the ALJ issued her decision on May 6, 2019.  See id. at 23.  The record does not contain records from Dr. Novak after August 2016.  See id. at 272.

The ALJ explained the importance of having all of plaintiff's medical records during plaintiff's hearing.  See T. at 36-38.  The ALJ did not mislead plaintiff in the letter notices informing him that records from Dr. Riccardi and Arthritis Health Associates were obtained, but nothing from Dr. Novak.  See id. at 207-210.  Moreover, in plaintiff's request for review of the ALJ's decision, he did not argue that the ALJ erred in failing to obtain updated treatment records from Dr. Novak, only from PA Spink-Palmieri or Arthritis Health Associates.  See id. at 211-12; cf. David B. C. v. Comm'r of Soc. Sec., No. 1:20-CV-01136 (FJS/TWD), 2021 WL 5769567, at *7 (N.D.N.Y. Dec. 6, 2021), report and recommendation adopted, 2022 WL 267348 (N.D.N.Y. Jan. 28, 2022) (affirming where the "[p]laintiff did not object to the contents of the record or identify any gaps that need to be filled.").  Further, the final records from Dr. Novak indicated that plaintiff's hypertension, although a "chronic problem" that "started more than 1 year ago[,]" was "unchanged" and "controlled."  Id. at 270.  Moreover, his EKG had not changed in three years.  See id. at 271.  The records do not reveal any functional limitations stemming from his hypertension; rather, they show problems arising from his arthritis and mention his being referred to rheumatology.  See id. at 254.  The updated records show a consistently normal blood pressure, and plaintiff testified that "aside from the arthritis" there was nothing keeping him from working.  Id. at 49.  Thus, the

updated treatment records from Arthritis Associates fill in any gaps related to his functional limitations. As plaintiff does not identify, nor can the Court determine, a gap in the record that the ALJ failed to fill, and the ALJ appropriately explained to plaintiff the importance of having a complete record, remand is not warranted on this ground.

**B. Severity Determination**

At step two of the disability analysis, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental abilities to perform basic work activities. See 20 C.F.R. § 416.920. Basic work activities include walking; standing; sitting; lifting; carrying; pushing; pulling; reaching; handling; seeing; hearing; speaking; understanding, remembering, and carrying out simple instructions; using judgment; and responding appropriately to supervisors, co-workers, and usual work situations. See Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012); see also 20 C.F.R. § 416.922(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to screen[ing] out de minimis claims, the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." Id. (alterations in original) (citations and internal quotation marks omitted). The failure to find an impairment severe is generally harmless "where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe." Takeylyn G. v. Saul, No. 1:18-CV-292 (ATB), 2019 WL 3369266, at *4 (N.D.N.Y. July 26, 2019).

12

The ALJ found plaintiff's gout and rheumatoid arthritis to be severe impairments and explained that plaintiff's "record also references a history of hypertension[.]"  T. at 18.  The ALJ determined that plaintiff's hypertension was "treated conservatively with medication management, and there is no evidence of any related complications or limitations caused by this condition."  Id.  Therefore, the ALJ found plaintiff's hypertension to be non-severe because "it d[id] not cause more than a minimal limitation of physical or mental ability to do basic work activity[.]"  Id.

The record reflects that plaintiff's hypertension was a "chronic problem[,]" but it was "controlled" with medication.  T. at 215; 233, 253-54, 262, 270.  Plaintiff also "participate[d] in exercise daily" and had "no blurred vision, chest pain, headaches, palpitations or shortness of breath."  Id. at 254; 270-71.  In August 2016 he had an EKG which showed that his symptoms were "unchanged" over the prior three years.  Id. at 271-73.  The record reflects that plaintiff's blood pressure was consistently normal.[7] See id. at 390, 395, 399, 403, 408, 414, 418, 423, 428, 433, 439, 449, 454, 459, 463, 468, 473.  In August 2017, plaintiff "had been without Enbrel for about a month and had a significant rheumatic flare[]" and an elevated blood pressure.  Id. at 438, 444-45.  A chest X-ray was normal and after going back on his medications, "he [] felt significant improvement[.]"  Id. at 438.  Finally, during Dr. Lorensen's consultative examination, plaintiff's blood pressure was normal, and Dr. Lorensen noted plaintiff's history of hypertension but expressed no related limitations.  See id. at 316-18.

---

[7] "A blood pressure reading consists of the systolic pressure, the pressure of blood pushing against the arteries when the heart beats, and the diastolic pressure, the pressure against the arteries when the heart is at rest.  The numbers are usually presented as the systolic over the diastolic pressure.  A reading of 140/90 or higher is considered high blood pressure, while a reading of 120/80 or lower is considered normal."  Alcantara v. Astrue, 667 F. Supp. 2d 262, 266 (S.D.N.Y. 2009); see High Blood Pressure, Medline Plus, https://medlineplus.gov/highbloodpressure.html (last visited February 14, 2022).

The ALJ appropriately considered plaintiff's hypertension, explained plaintiff's medication management, and found that the record did not reveal more than minimal limiting effects as a result.  See T. at 18; see, e.g., Shenk v. Astrue, No. 08-CV-152 (LEK/VEB), 2011 WL 7053623, at *5 (N.D.N.Y. Dec. 1, 2011), report and recommendation adopted, 2012 WL 140430 (N.D.N.Y. Jan. 18, 2012) (finding no error in the ALJ's step two determination that the plaintiff's hypertension was not a severe impairment where the "[p]laintiff ha[d] not referenced any evidence tending to undermine the ALJ's determination that her hypertension was well-controlled with medication during the relevant period.").  As such, the ALJ did not err in her step-two analysis and remand is not warranted on this ground.  Nevertheless, the Court finds that any error at step two would be harmless because the ALJ found plaintiff's gout and rheumatoid arthritis to be severe impairments and continued with the sequential analysis, providing adequate explanation for her determinations considering the record as a whole.  See, e.g., Kennedy H. v. Comm'r of Soc. Sec., No. 5:17-CV-0247 (CFH), 2018 WL 10086334, at *8 (N.D.N.Y. Aug. 29, 2018).

## C. Listings Analysis

"Plaintiff has the burden of proof at step three to show that [his or] her impairments meet or medically equal a Listing."  Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To meet a Listing, [the p]laintiff must show that [his or] her medically determinable impairment satisfies all of the specified criteria in a Listing."  Id.  "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify."  Id. (quoting Sullivan v. Zebley, 493 U.S. 521, 530

(1990)).  "Additionally, a court may uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence."  Andrea K. v. Comm'r of Soc. Sec., No. 1:18-CV-1448 (CFH), 2021 WL 1224049, at *6 (N.D.N.Y. Mar. 31, 2021) (citations omitted).

Here, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or equaled a Listing.  See T. at 18.  The ALJ expressly considered Listing 14.09 and determined that

> [t]he record d[id] not establish persistent inflammation or deformity of one or more major peripheral joints resulting in inability to ambulate effectively or perform fine or gross movements effectively or with involvement of multiple body systems . . . and recurrence of at least two of the constitutional symptoms or signs of fever, malaise, weight loss, or severe fatigue.

Id.  Further, the ALJ did not find evidence in the record of ankylosis of the spine combined with the involvement of two or more organs, or repeated manifestations of the condition including two constitutional symptoms "resulting in marked limitations in activities of daily living; maintaining social functioning; or concentration, persistence, or pace."  Id.

As the Commissioner explains, the record does not reflect that plaintiff's impairment met Listing 14.09.  See Dkt. No. 22 at 13; see also 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (effective May 24, 2016, to Sept. 28, 2016) (explaining the requisite findings to meet Listing 14.09).  Plaintiff did not require an assistive device such as a cane or walker.  See T. at 362.  Although he had limitations in both of his hands, the record reveals that he was able to use them independently.  See id. at 415, 419, 424. There is one occasion where Jennifer Lynch, PA-C notes that plaintiff was "[u]nable to

make a grip with his hands"; however, this was after plaintiff had not had Enbrel injections for "2-3 weeks" and was "flaring again[.]" Id. at 350; 349. This inability was not "[p]ersistent" as needed under Listing 14.09. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Next, the record reveals that plaintiff's inflammation was not generally accompanied by any constitutional symptoms of severe fever, fatigue, malaise, or involuntary weight loss. See T. at 394, 398, 402. On separate occasions, plaintiff reported fatigue and he appeared thin, and he reported weight loss but appeared "[n]ormal." Id. at 394-95, 402-03, 443-44. When he appeared thin he had been off of his rheumatoid arthritis medication "for a couple of weeks secondary to flulike illness." Id. at 394. Plaintiff's arthritis was also "w/o organ involvement." Id. at 325, 332, 396. Moreover, there is nothing in the record that indicates that plaintiff had ankylosing spondylitis or other spondyloarthropathies, and Dr. Lorensen noted that there was no evidence ankylosis during plaintiff's consultative examination. See id. at 317. Finally, the record does not show repeated manifestations of inflammation with at least two constitutional symptoms, and a marked limitation in one area of functioning. See, e.g., id. at 394-95 (reporting fatigue and weight loss but no distress, normal gait, and no range of motion limitations); 444 (reporting fatigue and tenderness but normal gait, no distress, normal nourishment, and no range of motion limitations). As plaintiff's impairments do not meet Listing 14.09, remand is not warranted on this ground.

**D. RFC Determination**

A plaintiff's RFC is defined as "what an individual can still do despite his or her limitations. . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]"

Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville, 198 F.3d at 52 (citation omitted)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  Id. (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'"  Hendrickson v. Astrue, No. 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, Social Security Rulings ("SSR") 85-15, 1985 WL 56857, at *6 (1985)).

The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  "In formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion." Angela G. v. Comm'r of Soc. Sec., No. 5:19-CV-1521 (ML), 2021 WL 22609, at *6 (N.D.N.Y. Jan. 4, 2021) (collecting cases).  Rather, "[a]n ALJ may [] accept portions of a medical opinion that are consistent with the record, and choose not to accept portions that are inconsistent with the record."  Joseph K. v. Comm'r of Soc. Sec., No. 5:17-CV-748 (DJS), 2018 WL 3716780, at *4 (N.D.N.Y. Aug. 2, 2018).  "[I]nconsistencies with objective findings can constitute a good reason for rejecting an opinion or accepting parts of the opinion."  Angela G., 2021 WL 22609, at *7.

### 1. Consistency of Allegations

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.  At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)); see SSR 16-3p: Titles II and XVI Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *1-2 (Oct, 25, 2017).  "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  Genier, 606 F.3d at 49 (alterations in original) (quoting 20 C.F.R. § 404.1529(a)).  "While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence."  Michael H. v. Saul, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *10 (N.D.N.Y. June 9, 2021) (citing 20 C.F.R. § 404.1529(c)(2)).  The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  Genier, 606 F.3d at 49 (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).

"Under SSR 16-3p, when evaluating a claimant's symptom intensity, '[t]he ALJ must consider the entire case record, including objective medical evidence, a claimant's statements about the intensity, persistence, and limiting effects of symptoms, statements and information provided by medical sources, and any other relevant

evidence in the claimant's record.'" <u>Kearney v. Berryhill</u>, No. 1:16-CV-00652 (MAT),
2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018) (alteration in original) (quoting <u>Vered
v. Colvin</u>, No. 14-CV-4590 (KAM), 2017 WL 639245, at *15 (E.D.N.Y. Feb. 16, 2017)).
The ALJ must "clearly demonstrate[] [that] he considered the entire case record . . . as
required by SSR 16-3p." <u>Id.</u> ("The ALJ provided significant detail regarding the basis of
this finding, noting there is little objective evidence of record to support the alleged
severity of the symptoms [the] [p]laintiff described at the hearing."); <u>see, e.g.</u>, <u>Michael
H.</u>, 2021 WL 2358257, at *11 (affirming the ALJ's determination where the ALJ
"examine[d] inconsistencies in the record" between the plaintiff's testimony and the
medical records and opinions).

    The ALJ determined that plaintiff's statements about the intensity, persistence,
and limiting effects of his symptoms were inconsistent with the record.  <u>See</u> T. at 19.
The ALJ reviewed plaintiff's subjective allegations and explained that he reported
"diffuse joint pain, particularly in his wrists, which limit his ability to stand, walk, and use
his hands[.]" <u>Id.</u>  Moreover, plaintiff testified that he could stand for fifteen minutes, lift
seven pounds, and sit for ten minutes.  <u>See</u> <u>id.</u> at 41-42.  The ALJ also recounted
plaintiff's testimony that "symptomatic flares [] cause pain and swelling in his feet,
ankles, and wrists, such that he sometimes has difficulty using his hands for tasks such
as getting dressed.  The claimant further testified that he does not require an assistive
device, such as a cane, to ambulate." <u>Id.</u> at 19.  Prior to reviewing the objective medical
records, the ALJ summarized:

    [t]he claimant's records show a history of treatment for rheumatoid arthritis
    and gout.  Accordingly, the undersigned finds that the claimant is limited to
    [a] reduced range of light work . . . .  However, when considering the
    claimant's medical record showing exacerbations when non-compliant

with treatment and his subsequent improvement and stabilization when following treatment recommendations and his medication regimen, the undersigned finds that the record does not support a finding of any greater limitations.

Id. at 19-20.  The ALJ reviewed the entire record, including the records submitted after plaintiff's hearing.  See id. at 20.  The ALJ explained that in August 2016 plaintiff reported "pain and swelling his left wrist, left ankle, and right hand, and an examination found tenderness to palpation in the claimant's shoulders, with tenderness and swelling in his wrists and hands bilaterally[.]"  Id. (citing T. at 277).  However, plaintiff reported that his "gout flares were relieved with Prednisone[.]"  Id. (citing T. at 277-79).  The ALJ also summarized Dr. Lorensen's consultative examination findings that plaintiff "had decreased range of motion throughout his back, neck, elbows, hips, and shoulders, as well as evidence of atrophy in his left upper extremity and bilateral lower extremities, with diminished [] grip strength bilaterally, worse in his left upper extremity[.]"  Id. (citing T. at 317).  The ALJ explained that Dr. Lorensen found "that the claimant had a normal stance, he was able to walk on his heels and toes, he could change positions without difficulty, and he was able to perform fine manipulations with his right hand[.]"  Id. at (citing T. at 317).

The ALJ next reviewed the findings from Arthritis Health Associates throughout 2017, 2018, and 2019, indicating "that [plaintiff's] symptoms are significantly improved and stable when he is consistently compliant with treatment."  T. at 20.  In April 2017, plaintiff "reported doing 'very well' overall, denying any pain and stating that he was only experiencing about twenty minutes of morning stiffness daily."  Id. (citing T. at 365).  The ALJ also noted that in August 2017, plaintiff complained of "marked arthralgias, as he had been out of his medications for approximately six weeks, and a follow-up from

later that month indicated 'significant improvement' after restarting treatment[.]"  Id. (citing T. at 355, 360).  Moreover, the ALJ recounted records from November 2017 indicating that plaintiff presented with swelling in his hands and wrists, with reduced grip strength, but "he had not refilled his medications and admitted to drinking alcohol, which is known to exacerbate inflammatory arthritis, over the weekend[.]"  Id. (citing T. at 344, 346).  The ALJ explained that records from January and April 2018 reflected that plaintiff's "rheumatic flares were largely the result of 'significant noncompliance,' and that [he] had 'noticeable improvement' in joint pain and swelling when taking his medications regularly[.]"  Id.  This was showcased in March 2018 records indicating that he "was feeling better with treatment and had good grip strength bilaterally[.]"  Id. (citing T. at 330-39).

The ALJ stated that "the more recent records show a similar pattern[.]"  T. at 20. A July 2018 record showed a flare-up after plaintiff had been off of his medications since April 2018.  See id. at 407.  However, in October 2018 plaintiff reported a decrease in his pain and swelling from a recent injection.  See id. at 398.  In February 2019, plaintiff had overall improved symptoms, noting a decrease in pain with Prednisone but continued pain in his upper back and shoulder.  See id. at 389.  Finally, the ALJ reviewed a February 2019 examination which "found mild tenderness in [plaintiff's] cervical spine and shoulders, . . . full range of motion throughout, . . . some swelling in his right hand, . . . [and] no swelling, tenderness, or limitations in range of motion in his left hand, elbows, hips, knees, feet, or ankles, as he was able to ambulate normally[.]"  Id. at 20 (citing id. at 389-91).

The Court finds no error in the ALJ's analysis of plaintiff's subjective allegations of his pain and the intensity of his symptoms. The ALJ acknowledged plaintiff's complaints that his arthritis left him unable to dress, and that he could not walk as far as he used to, and had consistent pain in his wrists and ankles. See T. at 19. The ALJ also appropriately noted that Dr. Lorensen found that plaintiff had reduced grip strength in both hands; could not zip or button with his left hand; and had decreased range of motion in his back, neck, shoulders, elbows, and hips. See id. at 20, 317. The remaining record does not express more limiting functional abilities. Instead, it indicates that plaintiff was able to ambulate independently and normally, and he had more severe symptoms only when he was not compliant with medication. See id. at 20. Specifically, plaintiff's updated records indicate that "[h]e had recurrent flares due to noncompliance related to stopping his medication due to running out of meds, as well as stopping them due to thinking they were unnecessary"; "[w]hen he is taking his meds regularly he has notable improvement in his joint swelling and pain"; "[h]e was informed that if he continues to be noncompliant with his medications and follow-up he could have permanent joint damage and loss of range of motion"; and that when he had been out of Enbrel "for about a month and a half" because "[h]e ran out of refills" he "thought maybe he did well without it" and had worsening symptoms. Id. at 334, 339, 346, 351, 360; see Marybeth S. v. Comm'r of Soc. Sec., No. 1:20-CV-01058 (MJR), 2022 WL 92546, at *7 (W.D.N.Y. Jan. 10, 2022) (affirming where "the ALJ appropriately discussed and relied" on the evidence showing that the plaintiff's "mental health symptoms improved when she consistently took her prescribed medication in an appropriate manner[]" and increased symptoms "often coincided with her failure to take this medication."). The

record also reflects that in August 2016, PA Spink-Palmieri and Dr. Riccardi advised plaintiff that he "should only have 3 alcoholic beverages a week or less since the alcohol along with the methotrexate could increase his liver enzymes." T. at 310. In November 2017, as the ALJ noted, plaintiff "admit[ted] to drinking a couple on Sundays during football[]" and "[h]e was advised to limit his alcohol intake." Id. at 346.

As to plaintiff's noncompliance with medication, SSR 16-3p explains that when an ALJ finds a plaintiff's symptoms inconsistent with his or her allegations of pain, the ALJ must consider the "possible reasons he or she may not comply . . . . We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016). The ALJ did not ask plaintiff why he was noncompliant with his medications. See T. at 32-62. However, as explained, the records reflected that his noncompliance was because he would run out of the medications and did seek a refill because he thought they were "unnecessary" or that he would do "well without it[.]" Id. at 334, 360; cf. Shane C. v. Comm'r of Soc. Sec. Admin., No. 1:20-CV-0895 (DEP), 2021 WL 5906236, at *11 (N.D.N.Y. Dec. 14, 2021) (finding that the ALJ's decision was supported by other grounds and declining to determine whether the ALJ erred in not asking the plaintiff about his noncompliance, but noting that the record revealed "no documented reason for the noncompliance."); James D. v. Comm'r of Soc. Sec., No. 1:20-CV-00720 (EAW), 2021 WL 2793667, at *8 (W.D.N.Y. July 6, 2021) ("It was proper for the ALJ to consider both Plaintiff's noncompliance with medication and his conservative treatment in assessing the

credibility of his subjective complaints.").  As the ALJ applied the two-step inquiry and set forth her reasons for finding plaintiff's allegations inconsistent, remand is not warranted on this ground.  See Shaw v. Comm'r of Soc. Sec., No. 7:11-CV-1463 (GLS), 2013 WL 316616, at *8 (N.D.N.Y. Jan. 28, 2013) ("[T]he ALJ's credibility determination is both sufficiently specific, and more importantly, supported by substantial evidence[]" because "the ALJ considered [the plaintiff's] activities of daily living, including her current work schedule of eighteen to twenty-one hours per week, and her noncompl[ia]nce with recommended treatments.").

### 2. Evaluation of Medical Opinions

For claims filed before March 27, 2017, ALJs are required to follow the treating physician rule set forth in 20 C.F.R. § 416.927 (2012)—"which generally requires a measure of deference to the medical opinion of a claimant's treating [source]" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Halloran, 362 F.3d at 31; 20 C.F.R. § 416.927.  "'Although the treating physician rule need not be applied if the treating physician's opinion is inconsistent with opinions of other medical records, 'not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician.'" Flagg v. Astrue, No. 11-CV-00458 (LEK), 2012 WL 3886202, at *10 (N.D.N.Y. Sept. 6, 2012) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)).  Should the ALJ decline to give controlling weight to a treating physician, he or she must still "consider various 'factors' in deciding how much weight to give the opinion." Petrie v. Astrue, 412 F. App'x. 401, 406 (2d. Cir. 2011) (summary order).

24

The ALJ considers: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see 20 C.F.R. § 416.927(c). "[W]here the evidence of record permits [the court] to glean the rationale of an ALJs decision," the ALJ need not "have mentioned every item of testimony presented to him [or her] or have explained why he [or she] considered particular evidence unpersuasive or insufficient to lead him [or her] to a conclusion of disability." Petrie, 412 F. App'x. at 407 (citation and quotation marks omitted). Unless a treating source's opinion is given controlling weight, the ALJ "must explain" the weight given to the opinions of a State agency consultant, as the ALJ must do for any opinions from treating sources, nontreating sources, and other nonexamining sources. 20 C.F.R. § 416.927(3)(2)(ii) (effective Aug. 24, 2012, to May 26, 2017). "The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record." Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) (citing 20 C.F.R. § 416.927(e)(2)(i) (2012)); see Calvin E. v. Saul, No. 5:18-CV-060 (CFH), 2019 WL 2869681, at *6 (N.D.N.Y. July 3, 2019) (collecting cases).

Under the treating physician rule, "there is no obligation to re-contact a treating physician where the evidence of record is 'adequate to permit the ALJ to make a disability determination.'" Benjalee W. v. Saul, No. 8:18-CV-1261 (TWD), 2020 WL 1029023, at *5 (N.D.N.Y. Mar. 3, 2020) (quoting Carvey v. Astrue, 380 F. App'x 50, 53 (2d Cir. 2010) (citing Perez v. Chater, 77 F.3d 41, 47-48 (2d Cir. 1996)); see also 20

C.F.R. §§ 416.920b(c)(1) (effective Mar. 26, 2012, Mar. 26, 2017) (indicating that the Commissioner "may recontact" a treating physician "[i]f the evidence is consistent, but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled").  Rather, the ALJ's decision may be affirmed where he or she reached a plaintiff's RFC "[b]ased on the record as a whole, including all the claimant's severe impairments, both singly and in combination, and consistent with the notes, findings, and opinions of [his] treating physician and other non-treating physicians[.]"  Benjalee W., 2020 WL 1029023, at *5 (alterations in original) (applying the treating physician rule and finding no error where "the ALJ appropriately considered the medical opinions in the record, including from [the p]laintiff's treating physicians, and adequately described the reasons he assigned each a specific weight.").

As explained, in his request for review by the Appeals Council, plaintiff argued that the ALJ should have requested a medical source statement from his "treating sources at Arthritis Health Associates, including Physician Assistant Spink-Palmieri" or recontacted Dr. Lorensen to clarify his "vague" limitations.  T. at 211.  The Commissioner contends that the ALJ was not required to obtain a treating source's opinion because she had sufficient evidence to assess plaintiff's RFC.  See Dkt. No. 22 at 23.  The Commissioner argues that "[t]he ALJ's assessment of postural and manipulative limitations is [] somewhat consistent with Dr. Lorensen's assessment of moderate to marked limitations bending, lifting, reaching, pushing, pulling, kneeling, squatting, and handling small objects with the left hand . . . but the ALJ reasonably afforded less weight to this portion of Dr. Lorensen's opinion[.]"  Id. at 20.  The

Commissioner avers that the ALJ appropriately "assessed limitations corresponding to the areas where Dr. Lorensen identified limitations" but did so in the context of the entire record which showed improved symptoms and that flares in his symptoms corresponded with periods of noncompliance.  Id. at 21; 20.  The Commissioner also identifies SDM[8] J. Willard's opinion that "the ALJ did not cite [] in the decision[,]" but argues that this "opinion lends further support to the ALJ's RFC assessment — except that the ALJ's assessment . . . is even more favorable to [p]laintiff."  Id. at 23-24.

There are two medical opinions in the record: SDM Willard's November 2016 disability evaluation, reviewed by M. Soden, MD; and Dr. Lorensen's September 2016 consultative examination.  See T. at 68-71, 315-18.  Dr. Lorensen noted that plaintiff appeared in no acute distress but had an abnormal gait, favored his right leg, and was unable to walk on his heels and toes.  See id. at 316.  Further, plaintiff could squat thirty percent, had a normal stance, did not need assistance changing or getting on and off of the exam table, and used no assistive device.  See id.  Dr. Lorensen also noted decreased ranges of motion in plaintiff's spine, elbows, hips, and shoulders, as well as "[m]arked muscle atrophy evidence in the left hand and the left upper extremity[,]" and "moderate muscle atrophy noted in the lower extremities."  Id. at 317.  Dr. Lorensen conducted fine motor skills tests and determined that plaintiff's "[h]and and finger dexterity [was] intact in the right hand, absent in the left hand.  Grip strength 4/5 in the right hand, 3/5 in the left hand.  The right hand can zip and button.  The left hand is unable to zip and button.  Both hands are unable to tie together."  Id.  Dr. Lorensen

---

[8] "SDMs [or "single decision makers"] are non-physician disability examiners who 'may make the initial disability determination in most cases without requiring the signature of a medical consultant.'"  Hart v. Astrue, 32 F. Supp. 3d 227, 237 (N.D.N.Y. 2012) (quoting 71 FR 45890–01, 2006 WL 2283653).

concluded that plaintiff had "no gross limitations sitting or handling small objects with the right hand . . .[;] mild to moderate limitations for standing and ambulating, presumably secondary to left ankle pain . . . [; and] moderate limitations for bending, lifting, reaching, pushing/pulling with the hands and arms, kneeling, squatting, and handling small objects with the left hand." Id. at 318.

In explaining plaintiff's RFC, the ALJ summarized Dr. Lorensen's consultative examination findings that plaintiff "had decreased range of motion throughout his back, neck, elbows, hips, and shoulders, as well as evidence of atrophy in his left upper extremity and bilateral lower extremities, with diminished [] grip strength bilaterally, worse in his left upper extremity[.]" T. at 20 (citing T. at 317). The ALJ explained that Dr. Lorensen found "that the claimant had a normal stance, he was able to walk on his heels and toes, he could change positions without difficulty, and he was able to perform fine manipulations with his right hand[.]" Id. (citing T. at 317) (emphasis added). The ALJ gave Dr. Lorensen's opinion "some weight" because it was "somewhat vague, as Dr. Lorensen d[id] not provide any specific functional limitations[.]" Id. at 21. "Moreover, although this opinion is broadly consistent with his examination of the claimant as detailed above, it does not account for the claimant's subsequent improvement and stability when compliant with treatment, as evidenced by his treatment records through Arthritis Health Associates[.]" Id. at 21.

The updated treatment records from Arthritis Health Associates reveal that Dr. Riccardi was plaintiff's primary provider and supervising provider when plaintiff was examined by others, such as Spink-Palmieri, PA. See, e.g., T. at 384, 393, 466. These records indicate that plaintiff was experiencing severe pain from the swelling and

tenderness in his wrists and ankles, and about twenty to thirty minutes of morning stiffness. See id. at 394, 398, 427, 453, 462, 467, 472. His pain ranged from zero to ten out of ten. See id. at 398, 417, 432, 434, 438, 443, 448, 453, 462, 467, 472. On examination he had a normal gait but tender and swollen points in his shoulder, wrists, knees, and hands. See id. at 433, 444, 449, 463, 474. He was taking Allopurinol for his gout, and Enbrel, Prednisone, and Methotrexate for his rheumatoid arthritis. See id. at 467, 455-55. His more severe pain generally correlated with lapses in medication. See id. at 413, 432, 438, 440, 443. In October 2017, plaintiff had resumed Enbrel but had not "had any injections in about 2-3 weeks[]" and was "[u]nable to make a grip with his hands[]" because of excessive swelling. Id. at 433. His grip strength varied from good to poor throughout his treatment history. See id. at 409, 415, 419, 424, 428. In March 2018, it was noted that plaintiff "had recurrent flares due to noncompliance related to stopping his medication due to running out of meds, as well as stopping them due to thinking they were unnecessary." Id. at 417. In February 2019, plaintiff had "[m]oderate synovitis noted to the right wrist upon exam. Tenderness with decreased range of motion upon flexion and extension also noted to the right wrist." Id. at 391. During the examination, mild tenderness was also noted along his shoulders and cervical area, but plaintiff had a "[g]ood range of motion to the remainder of the joints of both the upper and lower extremities bilaterally." Id.

The ALJ misstated that plaintiff was able to walk on his heels and toes because Dr. Lorensen found that plaintiff was unable to do so. Compare T. at 20, with id. at 317. Although the ALJ's remaining recitation of Dr. Lorensen's examination is accurate, she does not explicitly restate Dr. Lorensen's findings that (1) plaintiff had an abnormal gait,

(2) he favored his right leg, (3) he could only squat thirty-percent, (4) his hand and finger dexterity were absent in his left hand, (5) he was unable to zip and button with his left hand, and (6) he was unable to tie with both hands. Id. at 317; but see Brault, 683 F.3d at 448 ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").  The ALJ discounted Dr. Lorensen's opinion because it was "somewhat vague" as it did "not provide any specific functional limitations[,]" yet the ALJ did not reference an opinion expressing specific functional limitations.  However, in the ALJ's explanation of plaintiff's RFC, she cited to updated treatment records showing that in "March 2018 . . . [plaintiff] was feeling better with treatment and had good grip strength bilaterally[,]" and in February 2019, "[a]n examination found mild tenderness in [his] cervical spine and shoulders, [with] full range of motion throughout, and despite some swelling in his right hand, he had no swelling, tenderness, or limitations in range of motion in his left hand, elbows, hips, knees, or ankles, [and] was able to ambulate normally[.]"  T. at 20 (citing T. at 330-39, 389-91); see Kristen F. v. Comm'r of Soc. Sec. Admin., No. 3:20-CV-464 (ATB), 2021 WL 1668933, at *8, 10 (N.D.N.Y. Apr. 27, 2021) (affirming where, "[a]lthough the ALJ's RFC did not mirror a medical source statement," "[t]he ALJ also correctly noted that [the] plaintiff's subsequent primary care records did not show any ongoing signs of distress or deficits in strength, sensation, or fine manipulative functioning.").

The ALJ was not obligated to recontact Dr. Lorensen because he is not a treating source, and the ALJ had "sufficient evidence to determine whether [p]laintiff was disabled and [provided] reasonable explanations[.]"  Benjalee W., 2020 WL 1029023, at *5.  Although this Court has remanded where the ALJ discounted some of the limitations

opined by the consultative examiner as "vague[,]" in that scenario, "it was the only medical opinion contained in the record regarding plaintiff's functional restrictions." Travis L. v. Saul, No. 3:19-CV-663 (CFH), 2020 WL 5633823, at *9 (N.D.N.Y. Sept. 21, 2020). In Travis L., the Court took issue with the ALJ's primary reliance on the "plaintiff's ability to engage in certain activities of daily living" as justification for discounting the opinion. Id. Here, although the ALJ similarly found Dr. Lorensen's limitations to be "vague[,]" the record also contained SDM Willard's opinion, and the ALJ's primary reliance on plaintiff's most recent records was warranted. T. at 21.

In November 2016, SDM Willard reviewed the available records, including Dr. Lorensen's consultative examination, and determined that plaintiff had the ability to occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; sit, stand, and walk for "[a]bout 6 hours in an 8-hour workday"; was unlimited in his ability to push and pull; and had no manipulative limitations. T. at 68-69. The ALJ did not reference this determination explicitly but the ALJ's RFC is identical as it relates to plaintiff's limitations in lifting, carrying, sitting, standing, and walking. See id. at 18-20, 68. The ALJ "must consider findings and other opinions of State agency medical and psychological consultants[,]" and, in doing so, "must explain in the decision the weight given" to the opinion if the plaintiff's treating source is not given controlling weight. 20 C.F.R. § 416.927(e)(2)(ii) (effective Aug. 24, 2012, to May 26, 2017). Here, the ALJ did not explain what weight, if any, she gave to the SDM Willard's determination, which constitutes error. See id. However, this error is harmless where, as explained below, plaintiff's conditions are not overly complicated, and the ALJ appropriately considered and reached an RFC based on the entire record including Dr. Lorensen's findings. But

see Richard L. v. Comm'r of Soc. Sec., No. 6:17-CV-443 (LEK/DJS), 2018 WL 4522056, at *6 (N.D.N.Y. June 26, 2018), report and recommendation adopted in part, 2018 WL 3727355 (N.D.N.Y. Aug. 6, 2018) (emphasis added) (remanding because "[t]he ALJ gave [little] weight to [an] opinion that provided a functional analysis, and otherwise extrapolates from treatment records; she does not give any weight to any other functional analyses."); see also Humes v. Comm'r of Soc. Sec., No. 3:14-CV-0512 (GTS/WBC), 2016 WL 11477504, at *8 (N.D.N.Y. Mar. 16, 2016), report and recommendation adopted, 2016 WL 1417823 (N.D.N.Y. Apr. 11, 2016) (affirming where, although the use of the terms "mild" and "moderate" was vague, the opined "mild limitations" were consistent with the state agency consultant's opinion, and the ALJ found the consultative examiner's, state agency consultant's, and treating nurse practitioner's opinions consistent).

Of note, the two medical opinions in the record are from 2016, nearly three years prior to the ALJ's decision. See T. at 69, 315. "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (internal quotation marks and citation omitted). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." Carney v. Berryhill, No. 16-CV-269 (FPG), 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). "However, a medical opinion is not necessarily stale simply based on its age and a more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." Ruth M. v. Saul, No. 5:18-CV-01006 (FJS/CFH), 2020 WL 819323, at *8 (N.D.N.Y. Feb. 19, 2020), report and recommendation adopted,

2020 WL 1245404 (N.D.N.Y. Mar. 16, 2020); see also Andrews v. Berryhill, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (emphasis added) (holding that the ALJ did not err in relying on dated opinions where there was no indication the "[p]laintiff's condition had significantly deteriorated after the issuance of [the] opinions such that they were rendered stale or incomplete").

In 2016, SDM Willard determined that plaintiff had no manipulative limitations. See T. at 69. Dr. Lorensen opined moderate to marked limitations in plaintiff's ability to handle small objects with his left hand based on plaintiff's inability to button and zip. See id. at 317-18. Dr. Lorensen observed and three-out-of-five grip strength in the left hand. See id. at 317. Dr. Lorensen also noted plaintiff's four-out-of-five grip strength in his right hand but determined that plaintiff had no gross limitations in the right hand. See id. at 317. The records from Arthritis Health Associates indicate that in 2018 and 2019, plaintiff continued to have pain, swelling, and occasionally-reduced grip strength in both wrists. See id. at 325, 345, 350. Further, the records indicate that, occasionally, the swelling in plaintiff's right wrist was worse than his left. See id. at 325, 341, 377-78. Plaintiff also testified that because of the swelling and pain in "both wrists" he has trouble washing his back, putting on a shirt, reaching overhead, and working buttons and zippers. Id. at 46. Plaintiff stated that he would not be able to lift or carry ten or twenty pounds. See id. As it relates to the physical limitations SMD Willard assessed and the physical and manipulative limitations Dr. Lorensen opined, the record does not reflect such significant deterioration to render either opinion stale.

The ALJ accounted for the worsening in plaintiff's right wrist by limiting him to frequent handling of the right upper extremity. See T. at 18. Therefore, although

33

neither medical opinion reached right-handed limitations, the ALJ's decision to include the limitation is supported by the record.  Compare Albino v. Berryhill, No. 18-CV-6514 (LGS/HBP), 2019 WL 2477957, at *26 (S.D.N.Y. May 29, 2019), report and recommendation adopted, 2019 WL 2465139 (S.D.N.Y. June 13, 2019) (finding error where the ALJ found that the plaintiff "will be off task 5 percent of the time in an 8-hour workday" but "d[id] not explain where he even c[a]me[] up with his assessment of the amount of time plaintiff would be off task . . . [and it] was not suggested by any of the 10 physicians who examined plaintiff during the relevant period[.]"), with Brian O. v. Comm'r of Soc. Sec., No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *7 (N.D.N.Y. June 10, 2020) ("Because the evidence considered by the ALJ failed to discuss, or even identify, [the] plaintiff's capacity for standing and walking, the record did support not the ALJ's RFC determination.").  Moreover, "a limitation [being] included despite its absence from any medical opinion means [] that the RFC was more generous than the medical opinions required and where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand."  Theresa G. v. Saul, No. 20-CV-362, 2021 WL 1535472, at *5 (N.D.N.Y. Apr. 19, 2021) (internal quotation marks omitted).

Even excluding the two medical opinions, "[t]he Court is cognizant that when the medical evidence shows only minor physical impairments, an ALJ may assess the RFC using common sense judgment about functional capacity even without a physician's assessment."  Williams v. Comm'r of Soc. Sec., 366 F. Supp. 3d 411, 417-18 (W.D.N.Y. 2019) (citation and quotation marks omitted); see also Maxwell H. v. Comm'r of Soc. Sec., No. 1:19-CV-0148 (LEK/CFH), 2020 WL 1187610, at *7 (N.D.N.Y. Mar. 12, 2020)

(citation and quotation marks omitted) ("The Court recognizes that where the record reflects only minor impairments, the ALJ may, in his discretion, assess an RFC in the absence of opinion evidence."); see David B. C., 2021 WL 5769567, at *7 ("[A]lthough there is no medical source statement opinion from any of Plaintiff's treating sources, the Court finds the ALJ was not required to develop the record further because the evidence of record was sufficient for her to render a decision and contained no obvious gaps.").

Although there is no medical opinion identically reflecting plaintiff's RFC, his limitations are not so severe or complicated that the ALJ could not reasonably craft an RFC based on the record before her, primarily the updated treatment records from Arthritis Health Associates. Compare Ruth M., 2020 WL 819323, at *9 (emphasis added) (explaining that "the ALJ's RFC determination concerning plaintiff's upper extremities limitations was premised solely on [the consultative] opinion, which was not based on a complete medical record and, therefore, not supported by substantial evidence" because the opinion was written prior to the "plaintiff's condition in her upper extremities demonstrably deteriorate[ing]" and requiring surgery); Richard L., 2018 WL 4522056, at *6; 2 (citation omitted) (acknowledging that, "[w]here impairments are relatively simple and mild, an ALJ may be able to 'render a common sense judgment about functional capacity even without a physician's assessment[]'" but finding that the plaintiff's impairments of "chest wall hernia, history of fractured ribs, chronic obstructive pulmonary disease ('COPD') with chronic pleural thickening, sleep apnea, obesity, gastroesphoageal reflux disease ('GERD') with gastritis, and seasonal allergies[]" were too complicated and required a medical assessment).  The updated records reflect that

plaintiff had continued pain and swelling in both wrists, and continuously good range of motion in both upper and lower extremities.  See T. at 325, 336, 341, 409, 419.  The records also reflect that plaintiff had tenderness in his ankles, toes, and spine, but a continuously normal gait.  See id. at 331, 336, 340, 349-50, 361-62, 377-78, 382, 423, 433.  Throughout the record, plaintiff did not use an assistive device, and he was "full weight bearing[.]"  Id. at 399, 403.

The ALJ also appropriately considered plaintiff's noncompliance with medication management.  See id. at 21; see, e.g., Martes v. Comm'r of Soc. Sec., 344 F. Supp. 3d 750, 769 (S.D.N.Y. 2018) (affirming where "the ALJ reasoned [that the plaintiff's elevated blood pressure readings] were due to [his] conceded noncompliance with his medication protocols.").  The records explicitly noted that plaintiff "had recurrent flares due to noncompliance related to stopping his medication due to running out of meds, as well as stopping them due to thinking they were unnecessary."  T. at 334.  Plaintiff "was informed that if he continues to be noncompliant with his medications and follow-up that he would have permanent joint damage and loss of range of motion."  Id. at 434; see Percy T. v. Comm'r of Soc. Sec., No. 1:20-CV-829 (DB), 2021 WL 2155112, at *7 (W.D.N.Y. May 27, 2021) ("[T]he ALJ reasonably found that, with the proper treatment, [the p]laintiff could perform work on a regular and continuing basis.").

Importantly, plaintiff has the burden of proving that a more restrictive RFC is warranted, but has failed to present such an argument.  See Brenden R. v. Comm'r of Soc. Sec., No. 5:20-CV-821, 2021 WL 5965164, at *6 (N.D.N.Y. Dec. 15, 2021) ("The burden is on [the] plaintiff to show that the record evidence demands a more restrictive RFC[.]").  Based on the pain, swelling, tenderness, limited range of motion, and reduced

36

grip strength evident in the record, and Dr. Lorensen's examination findings, the ALJ's RFC determination is supported by substantial evidence. See James C. v. Comm'r of Soc. Sec., No. 5:19-CV-1206 (TWD), 2020 WL 6445907, at *9 (N.D.N.Y. Nov. 3, 2020) ("The ALJ's reliance on these medical findings constituted substantial evidence to support her disability determination, even in the absence of a formal medical opinion."); Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) ("The ALJ in this case based his findings on the psychiatric evaluation of a consultative psychologist who personally examined [the plaintiff] as well as [her] complete medical history and treatment notes, which themselves contained multiple psychological assessments []. Although the Social Security regulations express a clear preference for evidence from the claimant's own treating physicians over the opinion rendered by a consultative examiner, . . . this Court does not always treat the absence of a medical source statement from claimant's treating physicians as fatal to the ALJ's determination[.]"). As such, remand is not warranted on this ground.

### E. Step-five Determination

At step five, the burden shifts to the Commissioner "to show there is other work that [the claimant] can perform." McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (quoting Brault, 683 F.3d at 445). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert [("VE")]." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ uses a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating the plaintiff's limitations. See Aubeuf v. Schweiker,

649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical the expert is asked to consider is based on substantial evidence and accurately reflects the claimant's limitations.  See Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009) (summary order).  Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper.  See id. at 276-77.  VE Meredith's hearing testimony included a response to a hypothetical question based on plaintiff's RFC.  See T. at 56-58.  Because this Court has determined that the ALJ's RFC determination is supported by substantial evidence, it also concludes that the ALJ's hypothetical was proper, and her step-five determination is supported by substantial evidence.

Based on the foregoing, the Court concludes that the ALJ's decision was based on correct legal standards, and substantial evidence supports her determination that plaintiff was not under a disability within the meaning of the SSA.  See 20 C.F.R. § 416.920(g).

### VI. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 22) be **GRANTED**, the Commissioner's decision be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[9]

Dated: February 22, 2022
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  See FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  See id. § 6(a)(1)(C).